IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC. | : | Case No. 1:14-cv-00979 |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | |
| | : | **ORDER DENYING MOTION FOR** |
| LEGO DEMOLITION, LLC, *et al.*, | : | **DEFAULT JUDGMENTS WITHOUT** |
| | : | **PREJUDICE TO RENEW** |
| Defendants. | : | |

On June 19, 2015, the Clerk entered default against Defendants Lego Demolition, LLC and Mitch G. Stevenson. (Doc. 12.) Before the Court is Plaintiff's Request for Default Judgments upon a Sum Certain pursuant to Federal Rule of Civil Procedure 55(b). (Doc. 13.) Defendants have not responded, and the time for doing so has long passed. For the reasons that follow, Plaintiff's motion will be DENIED WITHOUT PREJUDICE TO RENEW.

I.  BACKGROUND[1]

A.  **Procedural Posture**

On December 26, 2014, Plaintiff CSX Transportation, Inc. ("CSX") filed its Complaint against Lego Demolition, LLC ("Lego") and Mitch G. Stevenson ("Stevenson"), bringing suit against Lego for breach of contract, promissory estoppel, and unjust enrichment and against Lego and Stevenson for fraud. (*See* Doc. 1.) CSX retained Marshall & Associates, Inc., a private agency licensed by the State of Ohio, to serve Stevenson individually and as the registered agent of Lego. (*See* Doc. 9-1, Affidavit of Non-Service at PageID 41 & Doc. 9-2,

---
[1] Background facts are drawn from Plaintiff's Complaint (Doc. 1) unless otherwise indicated. Because the Clerk has entered default, Defendants are deemed to have admitted the factual allegations in Plaintiff's Complaint, other than those relating to damages. *See United States v. Conces*, 507 F.3d 1028, 1038 (6th Cir. 2007); 10A Charles Alan Wright, Arthur M. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure § 2688 (3d ed. 1998).

1

Affidavit of Non-Service at PageID 45.)  Michael W. Green of Marshall & Associates attempted personal service of the Summonses and Complaint on January 9, 2015 and January 14, 2015, without success.  (*See* Doc. 9-1 at PageID 41–43 & Doc. 9-2 at PageID 45–47.)  Thereafter, at CSX's request and pursuant to S.D. Ohio Civ. R. 4.2(a), the Clerk served the Summonses and Complaint upon both Defendants via certified mail on February 10, 2015.  (*See* Doc. 3.)  They were returned to the Clerk on April 6, 2015 and April 8, 2015, marked "unclaimed/unable to forward."  Notably, the domestic return receipt card—PS Form 3811 ("the green card")—remained attached to the envelope addressed to Lego (c/o Stevenson), but it was missing from the envelope addressed to Stevenson individually.  (*See* Docs. 4, 5.)  At CSX's request and pursuant to S.D. Ohio Civ. R. 4.2(c), the Clerk then served the Summonses and Complaint upon both Defendants via ordinary mail on April 27, 2015.  (*See* Doc. 6.)  The next day, April 28, 2015, the Clerk received the missing green card from the envelope addressed to Stevenson individually.  The date of "April 24, 2015" was stamped on the card, which bore the endorsement of an individual named "Kendra Williams."  (*See* Doc. 7.)

On April 30, 2015, this Court issued an Order requiring CSX to show cause why its Complaint ought not be dismissed pursuant to Fed. R. Civ. P. 4(m).  (*See* Doc. 8.)  CSX responded the next day (Doc. 9), and the Court granted Plaintiff until July 1, 2015 to complete service (Doc. 10).

On June 5, 2015, CSX filed a Request for Entry of Default pursuant to Rule 55(a), to which it attached the appropriate affidavits and exhibits in support, confirming that service had been perfected and that Defendants had failed to plead or otherwise appear (*See* Docs. 11, 11-1, 11-2, 11-3, 11-4.)  As recited earlier, the Clerk issued an Entry of Default on June 19, 2015.  (Doc. 12.)

The instant motion belatedly followed on December 17, 2015. (Doc. 13.)

B. Facts

This matter arises from two transactions in which CSX sold scrap material to Lego between May 2014 and July 2014. (Doc. 1 at ¶ 12.) In this time band, CSX offered to sell to qualified buyers scrap rail and "on track machines" ("OTM") from its property located near Winchester, Indiana (the "Winchester Project"), as well as ten freight cars that were involved in a derailment outside of Hawthorne, Florida (the "Hawthorne Project"). (*Id.* at ¶ 13.)

On May 9, 2014, CSX issued an invitation to bid for the Winchester Project, and, on the following May 22, Lego submitted a purchase bid of $387.00 per gross ton of scrap. (*Id.* at ¶¶ 14, 15.) CSX awarded the Winchester Project to Lego on the condition that Lego apply for and obtain credit from CSX. (*Id.* at ¶ 16.) On May 28, 2014, CSX received via email a completed credit application. (*Id.* at ¶ 19.) Said application, purportedly signed by Lego CEO and sole principal stockholder Charlie Stout, was accompanied by financial statements that represented that—as of December 30, 2013—Lego owned assets valued in excess of $2.8 million. (*Id.* at ¶¶ 11, 19, 20.) CSX eventually extended $100,000 in credit to Lego in reliance upon the representation of the assets owned by Lego in addition to Stout's representation that he would personally guarantee any indebtedness owed by Lego to CSX. (*Id.* at ¶ 22, 24.)

Based on the extension of credit, CSX issued Sale Order ZP5075 to memorialize the scrap sale agreement for the Winchester Project. (*Id.* at ¶ 25.) ZP5075 provided that Lego was to remove the scrap rail and OTM at its bid rate of $387.00 per gross ton and was to pay for same within 30 days or be subject to a one percent penalty. (*Id.* at ¶¶ 26, 27.) Lego subsequently removed not only the designated scrap, but also CSX property that was not designated for scrapping. (*Id.* at ¶ 28.) Because Lego failed to submit a total calculation of the scrap metal

removed, CSX invoiced Lego for payment based on the estimated weights of scrap rail and OTM sold pursuant to ZP5075. (*Id.* at ¶¶ 29, 30.) On August 24, 2014, CSX sent Invoice No. 7195358 to Lego in the amount of $82,818.00, and advised that payment was due by September 28, 2014. (*Id.* at ¶ 31.) Lego has failed to pay the amount owed for the Winchester Project. (*Id.* at ¶ 32.)

On June 5, 2014 CSX issued an invitation to bid for the Hawthorne Project, and, on the following June 17, Lego submitted a purchase bid of $372.00 per gross ton for the freight cars. (*Id.* at ¶¶ 33, 34.) Lego had the highest bid, but it exceeded the $100,000 amount of credit extended vis-à-vis the Winchester Project. (*Id.* at ¶ 35.) On June 18, 2014 and in an email addressed to Stout, CSX informed Lego that it was the successful bidder and that CSX would permit a credit limit extension so long as both jobs were completed and the invoices paid promptly. (*Id.* at ¶ 36.) CSX issued Sales Order ZQ2059 to memorialize the sale agreement, which incorporated Lego's bid rate and the requirement that payment be made within 30 days of invoicing or be subject to a one percent penalty. (*Id.* at ¶¶ 38–40.) On June 19, 2014, in an email purportedly sent by Stout, Lego accepted CSX's conditions. (*Id.* at ¶ 41.) In a follow-up email dated July 3, 2014, again one purportedly sent by Stout, Lego advised CSX that it planned to begin site work on July 7, 2014. (*Id.* at ¶ 42.)

On July 30, 2014, a representative of Scallys Lube & Go Towing and Recovery, LLC ("Scallys") advised CSX that it had provided services to Lego earlier in the month but was having problems getting paid. (*Id.* at ¶ 44.) Scallys' representative identified Lego's agent as "Mitch Stevens." (*Id.* at ¶ 45.) On July 31, 2014, a similar communication was received from Eastern Crane & Rigging ("ECR"). (*Id.* at ¶ 46.) ECR's representative identified Lego's agent as "Mitch 'Charlie' Stevenson." (*Id.* at ¶ 47.) In response to these vendor complaints, CSX

received an email on August 1, 2014, supposedly from Stout, explaining: "We had an emergency within our Company. We didn't communicate with anyone besides Family for several days." (*Id.* at ¶ 49.) Despite repeated demands, Lego has failed to pay the amount owed to CSX for the Hawthorne Project. (*Id.* at ¶ 50.)

On September 29, 2014, Stevenson called CSX and acknowledged that Lego owed CSX for the scrap metal. (*Id.* at ¶ 54.) In addition, he stated that Stout had handled the Hawthorne Project but was no longer working for Lego. (*Id.* at ¶ 55.) CSX subsequently discovered, though, that Stout stopped working for Lego in February 2014 and hence did not submit the application upon which CSX relied in extending credit to Lego. (*Id.* at ¶ 56.) CSX also learned that the Lego email address with the header address "Charlie Stout" was accessible to employees other than Stout. (Id.) CSX maintains that Stevenson fraudulently submitted that application with Stout's name signed to the personal guarantee. (*Id.* at ¶ 57.)

CSX seeks an award of $204,826.76 against both Defendants, jointly and severally, as well as "the costs sought to be taxed [that] have been or will necessarily be incurred in the action." (Doc. 13 at ¶¶ 8, 9.)

## II. STANDARD OF LAW

Motions for default judgment are governed by Rule 55(b) of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(b) Entering a Default Judgment**.
>
> **(1) *By the Clerk*.** If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing . . .
>
> **(2) *By the Court*.** In all other cases, the party must apply to the court for a default judgment. . . If the party against whom a default judgment is

5

> sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
> **(A)** conduct an accounting;
> **(B)** determine the amount of damages;
> **(C)** establish the truth of any allegation by evidence; or
> **(D)** investigate any other matter.

Fed. R. Civ. P. 55(b).

The sequence of procedural steps required of one seeking judgment by default "begin[s] with the entry of a default by the clerk upon a plaintiff's request." *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 844 (6th Cir. 1983) (quoting *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)). "Then, pursuant to Rule 55(c), the defendant has an opportunity to seek to have the default set aside. If that motion is not made or is unsuccessful, and if no hearing is needed to ascertain damages, judgment by default may be entered by the court or, if the defendant has not appeared, by the clerk." *Id.*

"Once a default is entered, well-pleaded allegations in the plaintiff's complaint, except those pertaining to the amount of damages, are taken as true." *McIntosh v. Check Resolution Serv., Inc.*, No. 10-14895, 2011 WL 1595150, at *3 (E.D. Mich. April 27, 2011) (citing *Alfa Corp. v. Alfa Mort., Inc.*, 560 F. Supp. 2d 1166, 1174 (M.D. Ala. 2008)); *see also Trice v. Lake & Country Real Estate*, No. 86–1205, 1987 WL 38852, at *2 (6th Cir. Oct. 29, 1987) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.")). Still, a court must assess whether the factual allegations are legally sufficient to state the alleged cause of action. *McIntosh*, 2011 WL 1595150, at *3 (citing *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).

## III.  JURISDICTION

A court is obligated to consider whether it has both subject-matter and personal jurisdiction over a defendant before entering a default judgment.  *See, e.g.*, *Citizens Bank v. Parnes*, 376 Fed. App'x 496, 501 (6th Cir. 2010) ("Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court, including entry of the default judgment.") (citing *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006)).

CSX alleges that it is incorporated under the laws of the Commonwealth of Virginia with its principal place of business in Jacksonville, Florida.  (Doc. 1 at ¶ 1.)  It further alleges that Defendant Lego is an Ohio limited liability company with its principal place of business in Mason, Ohio and that Defendant Stevenson is an individual who resides in the State of Ohio, specifically at 8662 Hampton Bay Place, Mason, Ohio 45040.  (*Id.* at ¶¶ 3, 4.)  Because there is complete diversity between the parties, and because the amount in controversy exceeds $75,000,[2] the Court concludes that it has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1).  In addition, the Court concludes that it has subject-matter jurisdiction under 28 U.S.C. § 1337 inasmuch as CSX operates as an interstate rail carrier subject to the jurisdiction of the United States Surface Transportation Board and is governed by the provisions of the Interstate Commerce Act, 49 U.S.C. § 10101, *et seq.*  (*Id.* at ¶ 2.)

The Court also has personal jurisdiction over the Defendants, as they are both Ohio residents.  *Prouse, Dash & Crouch, L.L.P. v. DiMarco*, 116 Ohio St. 3d 167, 2007-Ohio-5753, 876 N.E.2d 1226, at ¶ 5 ("It is axiomatic that Ohio courts can exercise jurisdiction over a person who is a resident of Ohio.  Accordingly, if [defendants] were Ohio residents, there is no need to

---

[2] *See id.* at ¶¶ 6, 64, 72, 77, 85, 92, 101.

analyze whether they were also subject to jurisdiction pursuant to R.C. 2307.382, Ohio's long-arm statute.").

With these prerequisites satisfied and jurisdiction established, the Court proceeds.

IV. ANALYSIS

The facts alleged in the Complaint are sufficient to state the causes of action pled therein. On the record before it, however, the Court is unable to establish damages with reasonable certainty.

CSX proffers the Declaration of Ed Berlin, Manager of Accounts Receivable and Litigation, in support of damages. (Doc. 13-1.) Mr. Berlin testifies, consistent with the allegations within the Complaint, that Lego obtained credit from CSX and purchased $82,818.00 worth of scrap metal from CSX's facility in Winchester, Indiana[3] and purchased $111,699.64 worth of scrap rail cars from CSX in Hawthorne, Florida.[4] (*Id.* at ¶ 4.) And he confirms that each of the purchase agreements in which Lego entered required payment within 30 days or CSX would be permitted to assess a one percent penalty. (*Id.* at ¶ 6.) But those figures added together—even including the penalty[5]—yield a sum of only $196,462.82, an amount noticeably less than the $204,826.76 that Mr. Berlin claims is owed to CSX "for the value of its scrap metal." (*Id.* at ¶¶ 7, 8.) There is no explanation in Mr. Berlin's declaration to account for this $8,363.94 difference.[6] Most critically, however, there are *no* documents, either attached to the Complaint or to Mr. Berlin's declaration, to validate the amounts ostensibly owed. At the very least, the sales orders and unpaid invoices for both Projects should have been presented to the Court for review. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109

---

[3] *See* Doc. 1 at ¶ 64.
[4] *See* Doc. 1 at ¶ 77.
[5] The Winchester Project: $82,818.00 + $828.18 = $83,646.18
The Hawthorne Project: $111,699.94 + $1,117.00 + $112,816.64
[6] $204,826.76 - $196,462.82 = $8,363.94

8

F.3d 105, 111(2d Cir. 1997 ("While the District Court may not have been obligated to hold an evidentiary hearing [under Rule 55(b)(2)], it could not just accept [plaintiff's] statement of the damages. This did not satisfy the court's obligation to ensure that the damages were appropriate."); *United Artists Corp. v. Freeman*, 605 F.2d 854, 867 (5th Cir. 1979) ("[J]udgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation. . . Clearly these damages should not have been awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts.") Accordingly, before the Court enters default judgment, CSX must submit a second declaration from Mr. Berlin, or another appropriate corporate representative, to which is attached documents that corroborate the damage award sought.

V. CONCLUSION

Based on the foregoing reasons, Plaintiff's Request for Default Judgments upon a Sum Certain pursuant to Federal Rule of Civil Procedure 55(b) (Doc. 13) is hereby **DENIED WITHOUT PREJUDICE TO RENEW**.

The Clerk is **DIRECTED** to serve a copy of this Order (via First-Class Mail) on Lego Demolition, LLC, c/o Mitch Stevenson (Registered Agent), 8662 Hampton Bay Place, Mason, Ohio 45040 and on Defendant Stevenson personally at the same address.

**IT IS SO ORDERED**.

Dated:  __03/09/2016___            _s/Susan J. Dlott_____
                                   Judge Susan J. Dlott
                                   United States District Court